IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVERGREEN COMMUNITY POWER LLC | : | CIVIL ACTION |
| v. | : | |
| RIGGS DISTLER & CO., INC. | : | NO. 10-728 |

MEMORANDUM

Bartle, J.                                                              April 9, 2012

Before the court is the motion of plaintiff Evergreen Community Power LLC ("Evergreen") to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

Evergreen sued Riggs Distler & Co. ("Riggs"), a pipe installation contractor, for allegedly breaching the parties' contract in connection with the construction of a power plant for Evergreen in Reading, Pennsylvania. Riggs filed a counterclaim. The court tried this action without a jury and after making Findings of Fact and Conclusions of Law entered a judgment in favor of Evergreen and against Riggs in the amount of $422,923.83. Evergreen now asserts that the court made a factual error requiring it to alter or amend the judgment.

Rule 59(e) provides, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Our Court of Appeals has stated, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. A proper Rule 59(e) motion therefore must rely on one of three grounds:

(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 669 (3d Cir. 2010) (internal citations omitted).  Evergreen maintains that the court made an error of fact and seeks to prevent "manifest injustice."

This action, as noted above, arose from the construction of a massive biomass power plant.  Biomass is solid fuel that would otherwise end up in a landfill.  The power plant was also designed to have a natural gas backup which would be used if biomass was not available for any reason.  The power generated was to supply an adjoining plant which manufactures cardboard.  Any excess power was to be sold.

In our Findings of Fact and Conclusions of Law on this matter, we found the following:

> One of the critical components of the power plant is the vortex finder which is a circular piece of metal installed in the cyclone of the biomass boiler.  It creates a vortex as part of the burning and construction process and collects particles of biomass which are caught by the cyclone and burned.  Without the vortex finder, the boiler cannot burn biomass fuel.  The vortex finder, for which Riggs had no responsibility, was originally scheduled to be completed on March 30, 2009 but was not ready for installation until April 27, 2009 when it was delivered to the site.
> No delay in the completion of the construction of the biomass power plant can be attributed to Riggs while Evergreen awaited the vortex finder.  We find, however, that Riggs delayed the project from April 28, 2009 until it finished its work on May 17, 2009 and thus delayed the completion of the

>project for these 19 days.  Even assuming
>that there may have been some delays prior to
>April 27, 2009 because of the EWAs or RFIs,
>or because of reasons attributable to
>Evergreen such as priority changes, these
>delays did not prevent Riggs from finishing
>its work by that time.  The Court's finding
>that Riggs should have concluded its work by
>April 27, 2009 is bolstered by the fact that
>as of March 2, 2009, the EWAs had reduced
>Riggs' scope of work by $490,284.38,
>approximately 6,705 manhours, and 5,081
>linear feet of pipe, while only a minimal
>$5,020.14 payment to Riggs was added between
>March 2, 2009 and April 20, 2009 when the
>last EWA was issued.

Evergreen now contends that the court's conclusion that the vortex finder was originally scheduled to be installed by March 30, 2009 was an error of fact.  It argues that the record shows instead that the installation of the vortex finder was scheduled to begin on March 30, 2009 and to be completed by May 7, 2009 and that it was actually completed ahead of schedule on April 27, 2009.  Even though we found that the vortex finder was installed on April 27, 2009, Evergreen contends that our misstatement as to the March 30 date requires us to increase the judgment in its favor to over $2,000,000.  We are not persuaded.

We acknowledge that the record establishes that the installation of the vortex finder was to begin on March 30, 2009 - not originally scheduled to be completed on that date.  This difference, however, is of no importance to our Findings and Conclusions.  The significant fact remains, and it is undisputed, as the court found, that the vortex finder was installed on April 27, 2009.  It is also undisputed that the ultimate purpose

of the power plant was to create energy using biomass and that the vortex finder was a crucial item which needed to be installed before the plant could run on biomass. Whether the installation of the vortex finder was delayed or simply not put into place until April 27, 2009, the biomass system and thus the power plant could not be ready for operation until at least that date.

Riggs was responsible for the piping for the natural gas backup system. Although the piping was essential for the natural gas backup system, it was not needed to operate the biomass system. The completion of the piping and the natural gas backup system was not necessary, as Evergreen concedes, to the readiness of the power plant's use of biomass for fuel. Regardless of what Riggs did or did not do, the biomass power plant could not have been ready for operation without the vortex finder for which Riggs had no responsibility. There is no credible evidence that any delay by Riggs prior to April 27, 2009 caused any damage to Evergreen.

Furthermore, the damages the court awarded were based on the fact that some of Evergreen's other subcontractors, specifically MBR Construction Services, Inc., Landcoast Insulation, Inc., Phoenix Technology Holdings, ESI, Inc. of Tennessee, and Emerson Process Management were forced to stay on the project longer because of Riggs' delay. Significantly, these contractors needed to stay on the project until after the plant powered up on biomass fuel for the first time. As we have stated, the vortex finder was necessary for this to occur.

Accordingly, Riggs was not responsible for any of the time spent by these contractors on the project prior to the installation of the vortex finder on April 27, 2009.

Riggs, as we have found, simply did not delay the completion of the construction project before the vortex finder was installed.  As we have also found, once the vortex finder was installed, the completion of the power plant with its backup system was delayed because of Riggs' failure to complete its piping work until May 17, 2009.  Riggs stalled the project from April 28, 2009 or a total of 19 days.

While Riggs did not meet some of Evergreen's initial deadlines, Evergreen made changes to Riggs' work that we found slowed Riggs' progress.  In our Findings of Fact and Conclusions of Law, we wrote that "[t]he significant fact is that at various times up to January 31, 2009, the EWAs [Extra Work Authorizations] added additional piping, manhours, and payments to Riggs' work over what was contemplated in the October 29, 2008 contract...."  Because of this finding, we concluded that Riggs had to finish the project in a reasonable amount of time under all the circumstances.  That reasonable amount of time extended to April 27, 2009.

We affirm our finding that Riggs is only responsible for damages for delay from April 28, 2009 to May 17, 2009 and reject any proposed finding that Riggs was responsible for 94 days of delay as Evergreen contends.

Accordingly, we will deny Evergreen's motion to alter or amend the judgment.